# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**JAMES ANDERSON YOUNG,**

     **Plaintiff,**

**vs.**                                  **CIVIL ACTION NO. 2:16-CV-12085**

**NANCY A. BERRYHILL,[1]**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered December 14, 2016 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 13 and 14.)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (Document No. 13.), **GRANT** Defendant's request to affirm the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

decision of the Commissioner (Document No. 14.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

**Procedural History**

The Plaintiff, James Anderson Young (hereinafter referred to as "Claimant"), protectively filed his applications for Titles II and XVI benefits on May 16, 2013, alleging disability since December 29, 1994[2], because of "asbestosis, back, can't read or write".[3] (Tr. at 314.) His claims were initially denied on August 15, 2013 (Tr. at 116-121.) and again upon reconsideration on November 26, 2013. (Tr. at 126-131.) Thereafter, Claimant filed a written request for hearing on January 20, 2014. (Tr. at 132-133.) An administrative hearing was held on July 9, 2015 before the Honorable Carrie Bland, Administrative Law Judge ("ALJ"). (Tr. at 35-61.) On October 19, 2015, the ALJ entered a decision finding Claimant had not been under a disability at any time from July 11, 2013 through the date of the decision. (Tr. at 10-29.) On November 1, 2015, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 7-9.) The ALJ's decision became the final decision of the Commissioner on October 18, 2016 when the Appeals Council denied Claimant's Request. (Tr. at 1-6.)

On December 13, 2016, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 10 and 11.) Subsequently, Claimant filed a Brief in Support of Motion for Judgment on the Pleadings (Document No. 13.); in response, the Commissioner filed a Brief in Support of

---

[2] Claimant later amended his alleged onset date to July 11, 2013. (Tr. at 288.)

[3] In his Disability Report – Appeal, submitted on September 19, 2013, Claimant alleged that his asbestosis has decreased his ability to breathe. (Tr. at 337.) In a subsequent Disability Report – Appeal, submitted on January 24, 2014, Claimant alleged "back problems have worsened" and "migraines have worsened". (Tr. at 355.)

Defendant's Decision. (Document No. 14.) Consequently, this matter is fully briefed and ready for resolution.

## Claimant's Background

Claimant was 50 years old as of the amended alleged onset date, and considered a "person closely approaching advanced age" by the Regulations. See 20 C.F.R. §§ 404.1563(d), 416.963(d). (Tr. at 33.) Claimant has a limited education; he completed the eighth grade, and did not attend special education classes, however he alleged he had not learned how to read despite having several tutors. (Tr. at 45, 315.) Claimant's primary relevant past work included excavation work, brick and block, concrete, carpentry and operating equipment (Tr. at 44.); he stopped working in July 2011 because of his back, his "reading" and "because of other reasons" that included "lack of work". (Tr. at 41, 314.)

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third

inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

### Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2014. (Tr. at 15, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the amended alleged onset date of July 11, 2013. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the lumbar spine and chronic pulmonary insufficiency. (Tr. at 16, Finding No. 3.) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 17, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to

perform a range of light work:

> except the claimant can never climb ladders, ropes, scaffolds, and can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant can frequently reach overhead and in all directions. The claimant must avoid concentrated exposure to extreme cold and heat, humidity, excessive vibration, as well as hazards such as moving machinery and unprotected heights. The claimant should avoid even moderate exposure to irritants such as fumes, odors, gases, dust, and poorly ventilated areas. The claimant is limited to work involving verbal or simple written instructions. The claimant can understand, remember, and carry out simple instructions and can make judgments on simple work-related decisions. (Tr. at 18, Finding No. 5.)

At step four, the ALJ found Claimant was unable to perform any past relevant work. (Tr. at 22, Finding No. 6.) At the final step, the ALJ found that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience, and RFC indicated that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (Tr. at 22-23, Finding Nos. 7-10.) Finally, the ALJ determined Claimant had not been under a disability from July 11, 2013 through the date of the decision. (Tr. at 24, Finding No. 11.)

**<u>Claimant's Challenges to the Commissioner's Decision</u>**

Claimant argues that the ALJ did not include the standing and walking limitations found by consultative physician, James Namsupak, M.D. in the hypothetical questions posed to the VE, thus creating a defective RFC. (Document No. 13 at 10-11.) The ALJ gave Dr. Namsupak's opinion little weight finding that it was internally inconsistent and based on Claimant's subjective complaints as opposed to objective data, however, Dr. Namsupak's evaluation and opinion bear none of the deficiencies relied upon by the ALJ in discounting his opinion. (<u>Id</u>. at 10, 12-14.) Dr. Namsupak's findings found more support for some of Claimant's alleged limitations, and also less support for other alleged limitations, thus lending more credence to this opinion evidence. (<u>Id</u>. at 14.) Claimant further contends that the ALJ deviated from this Circuit's case law by failing to

provide a function by function analysis when determining the RFC, as well as failing to explain why Dr. Namsupak's standing/walking limitations were omitted. (Id. at 15.) Dr. Namsupak's limitations would reduce Claimant's RFC to sedentary work, and due to Claimant's age, and past relevant work, he would have been determined disabled under the Medical-Vocational Rules, therefore the ALJ's error was not harmless. (Id.)

Claimant requests this matter be remanded in order to correct these errors. (Id. at 16.)

The Commissioner asserts that the ALJ thoroughly considered and weighed the medical opinions of record in accordance with the Regulations and provided explanation for why Dr. Namsupak's opinion was entitled to little weight. (Document No. 14 at 9.) Moreover, the Fourth Circuit has rejected the notion that remand is required if an ALJ does not perform an explicit function by function analysis, particularly where, as in this case, the ALJ's decision includes a detailed discussion of the medical evidence findings and opinions with Claimant's functional limitations. (Id. at 10.) The Commissioner further argues that the ALJ made numerous citations to the evidence of record, including Claimant's own testimony, which showed Claimant retained the ability to perform a limited range of light work, and therefore, there was no need to include the additional standing and walking limitations as noted by Dr. Namsupak. (Id. at 11-12.) The ALJ's evaluation of Dr. Namsupak's opinion is also supported by substantial evidence and is compliant with the Regulations. (Id. at 12-13.) Dr. Namsupak's checkbox opinion included more extreme limitations that what was evident from his findings from Claimant's physical examination, therefore, the ALJ properly found it was internally inconsistent. (Id. at 13.)

The Commissioner asserts that the final decision is supported by substantial evidence and asks that it be affirmed. (Id. at 14.)

**The Relevant Evidence of Record**[4]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Claimant's Statements From His Function Report:

Claimant's activities of daily living included taking care of his newborn son "as much as I can", and the baby's mother takes care of feeding, diapering and caring for the baby, although this activity ceased when Claimant separated from his girlfriend. (Tr. at 330, 346.) He waters and feeds two pets (Id.); does household chores such as washing the dishes, cutting the grass, and doing laundry, though cutting the grass takes most of the day (Tr. at 331, 347.); prepares his own meals (Tr. at 331, 347.); shops for groceries (Tr. at 332, 348.); drives a car (Id.); watches television (Tr. at 333.): and takes care of his personal hygiene without assistance. (Tr. at 330-331, 346-347.) Claimant tries to get outside everyday; he cannot walk or sit for long. (Tr. at 332, 348.)

His social activities are limited to spending time with his girlfriend and baby, and his other children and grandchildren two to three times per month. (Tr. at 333, 349.) His pain makes him irritable towards others, but gets along with authority figures. (Tr. at 350, 351.)

He takes no medication for his conditions. (Tr. at 336, 352.)

Kip Beard, M.D., Consultative Examiner:

On July 29, 2013, Claimant underwent an internal medicine consultative examination with Kip Beard, M.D. (Tr. at 405-414.) Claimant complained of neck and lower back pain and reported

---

[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. The undersigned notes that the appeal herein does not concern Claimant's medically determinable mental impairments, which the ALJ found non-severe (Tr. at 16.), therefore this Proposed Findings and Recommendation does not include any discussion of the consultative examinations for Claimant's mental health status.

that over-the-counter Tylenol minimally helped, as did massage and chiropractic care. (Tr. at 406.) Dr. Beard's examination noted that Claimant ambulated without a limp, stood unassisted, rose from a seat without issue, and stepped up and down from the examination table without significant difficulty. (Tr. at 407.) An MRI of Claimant's lumbar spine at that time showed mild spurring. (Tr. at 410.) Dr. Beard's assessment regarding Claimant's back indicated: "up to moderate complaints of discomfort with motion testing, some motion loss of the neck and back"; "[s]traight leg raising produces no classic radicular complaints"; "[r]eflexes are normal and there was no neurologic compromise suggesting radiculopathy or myelopathy today." (Tr. at 409.)

State Agency Medical Consultants:

On August 12, 2013, Nisha Singh, M.D. indicated Claimant could occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and push and/or pull an unlimited amount. (Tr. at 68, 80.) Dr. Singh believed Claimant should avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, and poor ventilation. (Tr. at 68-69, 80-81.) On November 26, 2013, Uma Reddy, M.D. concurred with Dr. Singh's opinion with the added limitation to avoid exposure to hazards and extreme heat. (Tr. at 95-96, 108-109.)

Treatment Records Related to Back Pain:

Treatment records from Cabin Creek Health in October and December 2013 noted normal ambulation and minimal tenderness with an otherwise normal musculoskeletal examination. (Tr. at 421, 459.)

Claimant presented to Charleston Area Medical Center several times throughout 2013 with complaints of back pain. (Tr. at 424-425, 427-429, 437, 439, 442.) An assessment of acute chronic

back pain was noted each time Claimant presented to the facility. (Id.) On November 7, 2013, he presented with "low back pain after doing a great deal of labor over the last week" and that the pain radiated down the right leg. (Tr. at 441.) It was noted that he was ambulatory in the emergency department and he was instructed to follow up with Clendenin Clinic to manage his chronic back pain. (Tr. at 441-442.) Claimant left against medical advice before any provider evaluated him. (Tr. at 440.) Claimant returned on December 19, 2013 complaining of the "same thing, my back", that he rated at a 10/10 on the pain scale and described it as locking up on him. (Tr. at 436.) His physical examination was normal; he was discharged in stable condition with a recommendation to avoid heavy lifting, but no standing or walking limitations were assessed. (Tr. at 437-439.)

Treatment records from March 2014 and May 2014 indicated that Claimant continued to complain of back pain, however, his physical examinations were normal. (Tr. at 424-429.) It was noted that during the March 2014 visit, the attending physician had to wake Claimant on arrival into the emergency department and Claimant "immediately responded in a monotone voice 'back pain, can't sleep, haven't slept for 3 days', yet is resting peacefully in no sign of distress or discomfort at this point in time." (Tr. at 428.) The attending physician noted that when he had to leave Claimant's room to answer a phone call, upon his return, Claimant had left the room and was out in the parking lot smoking; the physician's examination revealed "again the patient is in no sign of discomfort." (Id.) During the May 2014 examination, Claimant continued to show normal range of motion with mild tenderness and no need for an assistive device for ambulation. (Tr. at 424-426.)

Records Related to Asbestosis:

On July 29, 2013, Dr. Kip Beard ordered Claimant to undergo a spirometry test that

indicated Claimant had "mild pulmonary restrictive disease"; it was noted Claimant gave good effort for testing. (Tr. at 411.) On May 5, 2015, Claimant underwent another pulmonary function test at Charleston Area Medical Center. (Tr. at 470-480.) The results were a "[n]ormal PFT", with normal spirometry, diffusion capacity, and flow volume, although the inspiratory portion of the flow volume loop "is somewhat poor quality, likely due to patient effort." (Tr. at 471.)

James Namsupak, M.D., Consultative Examiner:

On June 20, 2015, Claimant underwent a one-time consultative physical examination with James Namsupak, M.D. (Tr. at 492-497.) During that examination, Dr. Namsupak diagnosed him with lumbar pain and cyst, bilateral shoulder pain, and bilateral hip and knee pain. (Tr. at 497.) Dr. Namsupak observed that Claimant had full range of motion in his cervical spine, intact range of motion in the lumbar spine, and mild discomfort on moving from a sitting to supine position with no spasm detected.[5] (Tr. at 495.) Claimant had normal muscle bulk and tone, and full muscle strength. (Id.) He was able to squat and rise from that position with moderate difficulty; rise from sitting position without assistance; get up and down from the exam table; walk on heels and toes with ease; bend with mild difficulty; had normal tandem walking and hop on either foot bilaterally. (Tr. at 496.) Dr. Namsupak observed that Claimant did not present with an assistive device or require one, and that Claimant had a normal stance and a symmetric steady gait. (Id.) Dr. Namsupak concluded Claimant had "mild limitations with standing and walking due to lumbar pain and bilateral hip and knee pain." (Tr. at 497.) He also concluded that Claimant had moderate limitations with lifting and carrying; some limitations bending, stooping, crouching, and squatting; manipulative limitations on reaching; no manipulative limitations on handling, feeling, grasping,

---

[5] Dr. Namsupak completed a "Range of Motion Form" in support of his findings. (Tr. at 498-499.)

or fingering; and no visual, communicative, or workplace environmental limitations. (Id.)

In addition to the consultative examination, Dr. Namsupak completed a checkbox form, "Medical Source Statement of Ability To Do Work-Related Activities (Physical)". (Tr. at 500-505.) Dr. Namsupak indicated that Claimant could lift and carry up to twenty pounds frequently and lift and carry up to one hundred pounds occasionally. (Tr. at 500.) He also indicated that Claimant could sit up to four hours at one time without interruption and for a total of eight hours during an eight-hour workday. (Tr. at 501.) He also opined that Claimant could stand and walk up to one hour at one time without interruption and for a total of two hours per day. (Id.) Dr. Namsupak opined Claimant did not require the use of a cane to ambulate. (Id.) He also found Claimant capable of reaching overhead and in all other directions, handling, fingering, feeling, and push/pull with both hands frequently, and use both of his feet to operate foot controls frequently. (Tr. at 502.)

Dr. Namsupak also found that Claimant could climb stairs and ramps, ladders or scaffolds, balance, stoop, kneel, crouch and crawl frequently. (Tr. at 503.) He opined that Claimant could tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle and vibrations frequently, but never tolerate exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, and extreme cold or heat. (Tr. at 504.) Dr. Namsupak indicated in handwriting that the particular medical or clinical findings that supported his assessment that Claimant never be exposed to the aforementioned environmental conditions was because of Claimant's asbestosis, although "[w]e are unsure about his PFT status at this time as we do not have these records to review. Appears to be stable on exam today but also admits to using his sister's inhalers." (Id.)

Additionally, Dr. Namsupak determined that Claimant was physically capable of shopping,

travelling without a companion for assistance, ambulate without assistance devices, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare simple meals and feed himself, care for his personal hygiene, and sort, handle and use paper/files. (Tr. at 505.) Finally, Dr. Namsupak found Claimant's impairments would affect "none" other work-related activities. (Id.)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that he had injured his back years earlier while lifting a piece of concrete and had had trouble with it ever since. (Tr. at 41.) He stated that he had been unable to work steadily due to his back locking up and keeping him from performing his work duties. (Tr. at 42.) He said that he thought his original injury was in 1993 and that his back and his breathing problems were the two biggest things that kept him from working. (Id.)

Claimant stated that the severity of his breathing problems depended a lot on the weather. (Id.) He had good days and bad days, but he had trouble getting out of bed every morning; he explained that he had to sleep sitting up due to his breathing problems. (Id.)

Claimant stated that he "pretty much do as I can" in terms of his daily activities. (Tr. at 43.) He walked a little bit and sat, but he could not sit comfortably and it was hard for him to lie down. (Id.) He testified that his legs and his hands swelled and that it was "almost impossible of doing anything that's comfortable". (Id.) He washed the dishes once in a while if he could – when his hands were not swelling – and he vacuumed and mowed when he could. (Id.)

He testified that his past work consisted of doing concrete and brick/block work, carpentry work, and operating equipment. (Id.) He stated that his last job had been for a company that did

excavating which he did for about a year and one-half or two years before he quit because his back kept giving out on him. (Tr. at 43-44.) He stated that he lifted pieces of pipe, chains, bales of straw, a bag of concrete, and other miscellaneous items. (Tr. at 44.) Claimant testified that before he worked for the excavating company he was self-employed doing the same type of work. (Id.) He stated that he had also worked in restaurants cleaning tables and cooking, but that was more than fifteen years previously. (Id.)

Claimant acknowledged that he drove, but stated that he did not drive more than once or twice per week and then only if he had to go to the store to get something; the store was ten miles from his home. (Tr. at 45.) He did not drive to the hearing; someone brought him. (Id.)

Claimant testified that he went to school through the eighth grade and stopped going because he could not learn to read, write or spell even though he had many tutors who tried to teach him. (Id.) He stated that he could read "basics" that he saw every day, such as food labels at the grocery store and road signs, but he could not read a book. (Tr. at 45-46.)

He stated that he could read basic instructions and that he had no problem taking verbal instruction. (Tr. at 46.)

Claimant testified that he used a nebulizer with Albuterol two to three times per week and an inhaler two or more times per day depending on the weather. (Tr. at 46-47.) He stated that hot and humid weather made his breathing problems worse. (Tr. at 47.) He testified that he was receiving no treatment for his back because he did not have insurance, although he was in the process of getting insurance. (Tr. at 46-47.) He stated that the only medication he was taking was Ibuprofen, four tablets per day, spread throughout the day. (Tr. at 47.) Claimant testified that he was not receiving mental health treatment and took no medication for his mental health. (Id.)

Claimant stated that he was uncomfortable sitting in the chair at the hearing and that he had a sharp pain in his lower back down next to his legs. (Tr. at 48.) He stated that it was that pain that affected his ability to drive and, sometimes, to stand. (Id.) He stated that "It's like my leg wanted to just fall out from under me" and the problem with standing affected his ability to do dishes and other chores. (Id.) He had to sit down in order to keep from falling. (Id.)

Claimant said that he had good days when he could do some chores and bad days when he could not do them at all. (Tr. at 49.) He had about two good days a week on average. (Id.) He had no one to help with yard work, so if he could not mow he just let the grass grow; he noted that he had a very small yard but when he was able to mow he still had to take breaks while doing it. (Tr. at 49-50.)

Claimant testified that he slept poorly because he could not get comfortable and was up and down all night and he often felt tired and worn out. (Tr. at 50.) He stated that his hands and legs were swollen in the mornings and the swelling would start going down after he was up for three or four hours. (Id.) When his hands were swollen, he dropped things. (Id.)

Claimant explained that in November of 2013 he had back pain after doing a small remodeling job at his home. (Id.) He was laid up for a couple of days and could hardly move. (Tr. at 51.) He had not worked anywhere for pay since July 2013. (Id.)

He had never been diagnosed with a hearing loss. (Id.)

Tony Melanson, Vocational Expert ("VE") Testimony:

The VE testified that Mr. Young's past work as a concrete finisher/laborer was heaving and skilled work and his past work as a heavy equipment operator was medium and skilled work. (Tr. at 54.)

The ALJ asked the VE to assume a hypothetical individual of the same age, education, and past work experience as Claimant, and to further assume that the individual was limited to medium work; could frequently climb ramps and stairs; could occasionally climb ladders, ropes and scaffolds; could frequently balance, stoop, kneel, crouch, and crawl; could frequently reach in all directions overhead; should avoid concentrated exposure to extreme cold, extreme heat, humidity, excessive vibration, and hazards such as moving machinery and unprotected heights; should avoid even moderate exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas; would be limited to either verbal instructions or simple written instructions regarding his work; and could understand, remember, and carry out simple instructions and make judgments on simple work related decisions. (Tr. at 52-53.) The ALJ then asked the VE whether the described individual could perform Claimant's past work. (Tr. at 53.) The VE testified that the individual could not perform Claimant's past work because he would be reduced to doing unskilled work and both of Claimant's past jobs were skilled. (Tr. at 54.) The VE testified that the environmental restrictions would also preclude an ability to perform Claimant's past work. (Tr. at 54-55.)

The VE testified that the individual could perform several other jobs and gave as examples the jobs of hand packer, order filler, and machine feeder. (Tr. at 55.)

The ALJ then asked the VE to assume that the individual previously described was limited to light work rather than medium, and could only occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could frequently reach in all directions overhead; must avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, hazards such as moving machinery and unprotected heights, as well as even moderate exposure to irritants such as fumes, odors, dusts, gases, and

poorly ventilated areas; would be limited to work involving either verbal instructions or simple written instructions, and would be able to understand, remember, carry out simple instructions and make judgments on simple work related decision. (Tr. at 56.) The ALJ asked whether the hypothetical individual described could perform any jobs. (Id.) In response, the VE testified that there were jobs in the light category that could be performed and cited the representative jobs of mail clerk, non-government; retail stock clerk; and cafeteria attendant. (Tr. at 56-57.)

The VE testified that if the individual also needed to avoid exposure to excessive noise or needed to work in an environment where conversation level speech could be heard, the number of jobs available would be eroded, with a greater erosion of the medium jobs than the light jobs. (Tr. at 57.) He stated that the packer position would be eroded by twenty-five percent, the order filler position by fifty percent, the machine feeder by seventy-five percent, the mail clerk by fifty percent, the retail clerk by twenty-five percent, and the cafeteria attendant by fifty percent. (Id.) The VE testified that he based his answer on information in the DOT and on his own experience in observing the jobs. (Id.)

In response to questioning from Claimant's representative, the VE testified that if an individual were limited to standing and walking to two hours out of eight hours, the jobs the individual could perform would be "basically sedentary". (Tr. at 58.) The VE testified that if the individual would miss in the aggregate of at least two days of work per month due to fatigue, swelling or other symptoms, the individual would not be able to perform work at SGA levels. (Id.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

As previously stated, Claimant argues the ALJ erred in making the RFC finding because she failed to include the standing/walking limitations found by consultative examiner, Dr. James Namsupak, whose opinion was given only little weight.

<u>The Evaluation of Opinion Evidence:</u>

20 C.F.R. §§ 404.1527 and 416.927 govern the SSA's criteria for evaluating opinion evidence; per §§ 404.1527(a)(2), 416.927(a)(2):

Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

The Regulations provide that an ALJ must analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(c)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Under §§ 404.1527(c)(1) and 416.927(c)(1), more weight is given to a physician who examines a claimant than to a non-examining physician.

Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

The ALJ gave Dr. Namsupak's opinion "little weight . . . as many of his findings are internally inconsistent and they appear to rely more on the subjective allegations of the claimant rather than his objective data." (Tr. at 21.) Specifically at issue in this case is that Dr. Namsupak opined in his Medical Source Statement that Claimant was limited to walking and standing for a total of two hours in an eight-hour workday (Tr. at 21, 501.) Claimant argues that the ALJ's explanation for giving little weight to this opinion is insufficient under Fourth Circuit jurisprudence pursuant to Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986) and Hammond v. Heckler, 765 F.2d 424 (4th Cir. 1985). The undersigned's review of the ALJ's written decision

indicates that the explanation sufficiently meets the Fourth Circuit standard. However, it is important to first recognize that Dr. Namsupak's opinion, that Claimant was restricted to walking and standing for a total of two hours in an eight-hour workday, is a "residual functional capacity . . . or the application of vocational factors" an issue solely reserved to the Commissioner. <u>See</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Moreover, pursuant to Sections 404.1527(d)(3) and 416.1527(d)(3), the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner."

Unlike the cases explored in <u>Cook</u> and <u>Hammond</u>, the instant case did not contain evidence that Claimant had functional deficits that warranted further explanation by the ALJ in denying the claims, because the ALJ herein provided more than adequate explanation for the weight she gave Dr. Namsupak's opinion for judicial review. Before addressing the opinion evidence, the ALJ herein properly performed the two-step process in substantiating Claimant's allegations about the intensity, persistence and functionally limiting effects of his pain and other symptoms against the objective medical evidence.[6] (Tr. at 18-20.)

Even before evaluating his opinion, the ALJ herein noted that Dr. Namsupak provided "a consultative physical examination" on June 20, 2015, and pertinent to the discussion at bar, found Claimant "had mild limitations with standing and walking due to lumbar pain and bilateral hip and knee pain[] and that he did not require as assistive device for short and long distances and uneven terrain." (Tr. at 21.) The ALJ further noted that Dr. Namsupak "indicated that the claimant had hip discomfort and back pain with tenderness but intact range of motion"; Dr. Namsupak's examination also indicated "positive straight leg raising and difficulty squatting and bending, but

---

[6] <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. §§ 404.1529, 416.929.

a steady, symmetric gait." (Id.) Finally, the ALJ acknowledged that "[d]espite minimal objective findings regarding the claimant's allegations, Dr. Namsupak limited the claimant to somewhere between medium and sedentary exertion (e.g. sit 8 hours, walk/stand 2 hours, but occasionally lift 100, frequently lift 20 pounds) without the need for a cane to ambulate[.]" (Id.)

The undersigned **FINDS** that the ALJ's review of Claimant's statements from his Function Reports, his hearing testimony, the objective medical evidence (Tr. at 16-17, 19-20.), briefly reproduced *supra*, coupled with her discussion of Dr. Namsupak's consultative physical examination findings as well as his accompanying medical source opinion, provides more than sufficient explanation for the weight she gave his opinion pursuant to the aforementioned Regulations. Additionally, the undersigned **FINDS** that the ALJ's determination that Dr. Namsupak's findings were internally inconsistent and relied more on Claimant's subjective allegations is supported by substantial evidence: the intact range of motion in his back and hips; the steady, symmetric gait; and the no requirement for an assistive device to ambulate for short and long distances and uneven terrain is contradictory with the findings that Claimant had mild limitations with walking and standing *due to back, hips and knee pain* and restriction to walk and sit no more than two hours total. Clearly, the evidence suggested that Dr. Namsupak's conclusions were at minimum, based on Claimant's subjective allegations, not just objective data, nevertheless, such contradictory evidence was the ALJ's duty to reconcile, not this Court's.[7] See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

---

[7] The undersigned found interesting, though it is not applicable to the specific issues on the appeal herein, that the ALJ noted Dr. Namsupak's diagnosis that Claimant had bilateral shoulder pain with lumbar pain but had "moderate limitations in lifting and carrying weight due to his lumbar pain, bilateral shoulder pain, and bilateral hip and knee pain" with "tenderness in the shoulders with limited range of motion" but found Claimant capable of occasionally lifting 100 pounds and frequently lifting 20 pounds. (Tr. at 21.) Indeed, these findings further support the ALJ's conclusion that Dr. Namsupak's findings were "internally inconsistent". (Id.)

<u>The RFC Assessment:</u>

Residual functional capacity represents the *most* that an individual can do despite his limitations or restrictions. <u>See</u> Social Security Ruling 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. <u>See</u> <u>Id</u>. §§ 404.1527(d), 416.927(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

<u>Diaz v. Chater</u>, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Based on the little weight assigned to Dr. Namsupak's opinion, particularly with respect to the standing and walking limitation to two hours total, the ALJ was not duty bound to pose a hypothetical question to the VE including that limitation. Hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. <u>See</u> <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989). As stated above, the reconciliation of this conflicting evidence was for the ALJ to resolve, not this Court. <u>See</u> SSR 96-8p, 1996 WL 3741784, at *7.

Contrary to Claimant's assertions that the ALJ herein failed by not performing a function-by-function analysis, the Fourth Circuit has rejected an interpretation of SSR 96-8p that would be tantamount to a "per se rule requiring remand when the ALJ does not perform an explicit function-

by-function analysis." See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). As noted *supra*, the ALJ determined that Claimant's alleged limitations were not credible. Following the discussion of the medical evidence of record, Claimant's allegations and testimony, the evaluation of the opinion evidence, the ALJ summarized her RFC assessment that "[t]he objective medical evidence of record simply does not support the claimant's allegation of total disability":

> He can read well enough to have performed skilled work in the past. His Spirometry does not show the presence of a disabling impairment. His O2 values are always high on examination and he does not use oxygen and has minimal intervention with a nebulizer 2-3 times a week and an inhaler during the day. He has very mild degenerative disc disease that simply does not support the extreme pain he alleges and discomfort he alleged at the hearing and in his filings. Furthermore, his inconsistent work history does not lend credibility to his allegation that he is not working because of his impairments. (Tr. at 22.)

The RFC assessment included the required narrative discussion that allows for meaningful judicial review and with respect to the findings of fact and conclusions provided in the written decision, it is clear that the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to [her] conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

In sum, the undersigned **FINDS** that the ALJ's RFC assessment is supported by substantial evidence, and further **FINDS** that the decision finding Claimant was not disabled is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's Motion for Judgment on the Pleadings (Document No. 13.), **GRANT** the

Defendant's Motion for Judgment on the Pleadings (Document No. 14.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: May 1, 2017.

Omar J. Aboulhosn
United States Magistrate Judge